# Schlam Stone & Dolan LLP

HARVEY M. STONE
RICHARD H. DOLAN
WAYNE I. BADEN
MICHAEL A. BATTLE
JAMES C. SHERWOOD
THOMAS A. KISSANE
BENNETTE D. KRAMER
JEFFREY M. EILENDER
JOHN M. LUNDIN
JONATHAN MAZER
ERIK S. GROOTHUIS
ROBERT L. BEGLEITER
ELIZABETH WOLSTEIN
DOUGLAS E. GROVER
BRADLEY J. NASH

26 Broadway
New York, N.Y. 10004

(212) 344-5400
Telecopier: (212) 344-7677
www.schlamstone.com

PETER R. SCHLAM (1944-2005)

OF COUNSEL
RONALD G. RUSSO
STANLEY N. ALPERT
MARY W. ANDERSON
HILLARY S. ZILZ
VITALI S. ROSENFELD
ANDREW S. HARRIS

NIALL D. O'MURCHADHA
SAMUEL L. BUTT

**BY FACSIMILE and ECF**

October 14, 2014

Hon. Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *In re Lehman Bros., Inc.*, No. 14-CV-00535 (SAS) (MHD)

Dear Judge Scheindlin:

As counsel to Moore Global Investments, L.P. ("MGI"), I write in response to the Lehman Brothers, Inc. ("LBI") Trustee's October 8 letter requesting a pre-motion conference in advance of LBI's anticipated motion for summary judgment. In this case, MGI seeks the return of cash balances remaining in its customer accounts at LBI.

### Factual Background

MGI opened two futures customer accounts with LBI's futures commission merchant ("FCM") pursuant to a Master Institutional Futures Customer Agreement (the "Futures Agreement") in late 2002. The Futures Agreement defined MGI as the "Customer" and permitted MGI to trade in futures contracts and foreign exchange ("FX") forward contracts. Both types of contracts were subsequently booked in MGI's accounts.

Several key facts compel the conclusion that MGI is entitled to recover its cash balances in full, and distinguish MGI's claims from those of ordinary FX claimants such as the *Peregrine* claimants cited by the Trustee in its October 8 letter. **First**, the Futures Agreement expressly provided that LBI held MGI's "Property" (defined as contracts, monies, funds, securities, commodities and other property or collateral in MGI's accounts) as security. Unlike the *Peregrine* claimants, at no time did MGI grant LBI the right to use MGI's funds in LBI's business, except in the limited circumstance—which never transpired—where MGI defaulted on its obligations to LBI. **Second**, whenever MGI wired funds to LBI, it always wired them into an account denominated as a "Lehman Brothers Inc. Customer Segregated Commodity Funds Account" at an unaffiliated financial institution, JP Morgan Chase. Whenever MGI withdrew funds from LBI, LBI always wired them back to MGI from the same segregated customer account. The Trustee does not dispute these facts and has been unable to show that MGI's assets were ever transferred out of the segregated customer account. **Third**, MGI was never notified

that its assets might not be protected as customer property in the event of LBI's bankruptcy (unlike *Peregrine*'s FX claimants). To the contrary, according to a document LBI sent to FCM customers in the spring of 2008 titled "Customer Asset Protection Overview," no customer funds—including funds held in a "non-regulated" funds account LBI was required to maintain pursuant to SEC Rule 15c3-3—would ever be commingled with LBI's proprietary funds. In fact, the document promised that "an LBI bankruptcy would have no material impact on customers' assets" in the non-regulated account and that "creditors of LBI's bankrupt estate would have no claim to any of the assets held" in the account. **Last**, when MGI representatives spoke with LBI personnel in 2008 to ensure that their funds would be protected as customer assets in an insolvency, LBI confirmed to MGI that they would be.

## Legal Background

MGI's assets are entitled to "customer property" treatment under applicable law and regulation for several reasons. First, because LBI was jointly registered as a broker-dealer and an FCM, §78fff-1(b) of SIPA subjects the Trustee to the duties of a trustee under subchapter IV of Chapter 7 of the Bankruptcy Code applicable to the liquidation of FCMs. These provisions define a "customer" (among other things) as an entity holding a claim against an FCM arising out of "a deposit or payment of cash, a security, or other property with such [FCM] for the purpose of making or margining such a commodity contract." 11 USC § 761(9)(A)(ii). MGI's claims arise out of "a deposit or payment of cash . . . for the purpose of . . . margining" a commodity contract.

Similarly, the regulations promulgated by the CFTC to implement subchapter IV provide that "customer property" includes (again, among other things): (1) property margining a "commodity contract"; (2) "[p]rofits or contractual rights accruing to a customer as the result of a commodity contract"; and (3) cash that is segregated on the filing date. *See* 17 C.F.R. §§ 190.08(a)(1)(i) and (ii). Thus, MGI is a "customer," and the funds in its accounts at LBI constituted "customer property" under the statute and regulations applicable to an FCM liquidation, assuming that MGI's claims arise from cash that is segregated as of the filing date or represent either excess cash or margin posted in connection with a "commodity contract."

The Futures Agreement and the FX forward contracts booked in the MGI customer accounts as of the filing date qualify as "commodity contracts" under 11 U.S.C. § 761(4). **First**, MGI's FX forward contracts constitute "commodity contracts" because they are similar to FX futures contracts. As MGI's expert has opined, both MGI's FX forward contracts and FX futures contracts involve agreements to exchange a pair of currencies at a predetermined rate and point in the future; require physical settlement at maturity (but in practice are often cash settled or extended prior to maturity); are subject to U.S. dollar-based margin requirements (in the case of MGI's FX forwards, LBI personnel have testified that LBI calculated margin in the same way as it did for FX futures); and present counterparty credit risk. The FX forwards MGI traded under the Futures Agreement are therefore distinguishable from the retail spot FX contracts at issue in the *Peregrine* case, which were not forward contracts and do not appear to have been margined like futures contracts. **Second**, pursuant to 11 U.S.C. § 761(4)(J), the Futures Agreement is a "security agreement or arrangement . . . related to" a futures contract because it authorized trading in futures contracts and provided security arrangements for such trades.

Hon. Shira A. Scheindlin
October 14, 2014
Page 3 of 3

    Moreover, MGI's assets were undeniably protected under SEC Rule 15c3-3, the SEC's customer asset protection rule designed to safeguard customer assets within its scope in the event of the insolvency of a broker. The Trustee's Rule 30(b)(6) representative acknowledged at deposition that MGI's funds were entitled to customer asset protection under SEC Rule 15c3-3 at a minimum, and that the special reserve account LBI maintained pursuant to Rule 15c3-3 was *overfunded* by some $769 million as of the filing date. Thus, the Trustee does not dispute that MGI is a "customer" for purposes of SEC Rule 15c3-3. In fact, about $77 million of MGI's customer account assets were apparently protected pursuant to LBI's 15c3-3 customer asset protection calculation as of the filing date—far more than MGI's current $12 million claim. No such protection was provided to the assets of the *Peregrine* FX claimants because the FCM in that case was not registered as a broker-dealer like LBI.

    Last, the Trustee may not seize MGI's funds as LBI's property and make it available to LBI's other creditors. MGI never gave LBI the right to use its property or to commingle its assets with LBI's proprietary assets, and there is no evidence that LBI did so. Since the Trustee has no greater rights than did LBI pre-petition, he may not claim MGI's property for the estate.

### MGI's Cross-Motion For Summary Judgment

    MGI intends to cross-move for summary judgment based on the legal arguments outlined above. If the Court elects to schedule an evidentiary hearing, MGI believes that live testimony will help the Court make two fact determinations: (1) whether the FX forward contracts MGI booked into its accounts at LBI are "similar" to FX futures, a topic on which MGI will present expert testimony[1] that LBI will not rebut with its own expert, having elected not to retain one; and (2) whether MGI's funds were segregated from LBI's funds on the filing date.

Very truly yours,

Erik S. Groothuis

cc:    Michael E. Salzman (by email)
        Anson B. Frelinghuysen (by email)
        Marlena Frantzides (by email)

---

[1] At a conference held on August 5, 2014, the Court indicated that expert testimony on this topic would be of assistance. In reference to my presentation, the Court said that "when he started talking about something futures, my eyes glazed over a bit, and I thought, well, I never heard of those. And it would be helpful to have an education." (Transcript at 5.)